UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | | |
|---|---|---|
| DM ARBOR COURT, LTD., | § | |
| | § | |
| *Plaintiff*, | § | |
| | § | |
| v. | § | CIVIL ACTION H-18-1884 |
| | § | |
| THE CITY OF HOUSTON, | § | |
| | § | |
| *Defendant*. | § | |

## AMENDED MEMORANDUM OPINION & ORDER

Pending before the court is defendant City of Houston's ("the City") motion to dismiss (Dkt. 26) plaintiff DM Arbor Court, Ltd.'s ("Arbor Court") second amended complaint (Dkt. 22) under Rule 12(b)(1) for lack of jurisdiction and Rule 12(b)(6) for failure to state a claim, Arbor Court's response in opposition (Dkt. 31), and the City's reply (Dkt. 34). Also pending is Arbor Court's motion for leave to file third amended complaint (Dkt. 61) ("motion to amend") and appendix (Dkt. 62), the City's amended response in opposition and appendix (Dkt. 67), and Arbor Court's reply and appendix (Dkt. 77).[1]

Having considered the motions, responses, and applicable law, the court finds that Arbor Court's motion to amend (Dkt. 61) should be **DENIED** as futile because the takings claims it seeks to reintroduce are unripe, and the City's motion to dismiss (Dkt. 26) should be **GRANTED** because (1) Arbor Court's other federal constitutional claims are also unripe; (2) the court declines to

---

[1] The court originally ruled on the pending motions (Dkt. 26, 61) on September 18, 2019. Dkts. 69, 70. On October 15, 2019, Arbor Court filed a motion to alter or amend judgment, pointing out that the court issued its ruling while a stay was in place, denying Arbor Court the opportunity to reply to the City's response to its motion to amend. Dkt. 72 ¶¶ 4, 5. Recognizing its error, the court vacated its entry of judgment to allow Arbor Court the opportunity to file its reply. Dkt. 75. Having considered Arbor Court's reply, the court finds that its original judgment was correct, but amends its opinion to account for the arguments and facts raised in Arbor Court's reply.

exercise jurisdiction over Arbor Court's supplemental state law claims pursuant to 28 U.S.C. § 1367(c)(3); and (3) Arbor Court's request for injunctive relief must be dismissed because all of the underlying claims fail to survive the motion.

## I. BACKGROUND

### A. Factual Background

Arbor Court is a 15-building, 232 unit, multi-family apartment community located at 802 Seminar Drive in Houston, Texas. Dkt. 22 ¶ 15; Dkt. 61-1 ¶ 17. The community operates as a Section 8 housing property through a Housing Assistance Payment ("HAP") contract with the United States Department of Housing and Urban Development ("HUD"). Dkt. 22 ¶¶ 5, 27; Dkt. 61-1 ¶ 3. Arbor Court's first-floor units were damaged from flooding as a result of Hurricane Harvey in August of 2017, causing some of Arbor Court's residents to be displaced. Dkt. 22 ¶ 1; Dkt. 61-1 ¶ 2. The parties agree that Arbor Court "is subject to the City's municipal ordinances" (Dkt. 22 ¶ 15; Dkt. 61-1 ¶ 17), including Houston's Floodplain Ordinance (Dkt. 26 at 2). *See* Houston, Tex. Rev. Ordinances, ch. 19.[2] The parties agree that the Floodplain Ordinance requires Arbor Court to apply for repair permits, and that Arbor Court did in fact apply for permits to repair damage sustained during Hurricane Harvey. Dkt. 22 ¶ 2; Dkt. 26 at 2; Dkt. 61-1 ¶ 4.

On October 10, 2017, the City's Floodplain Management Office ("FMO") found that each of Arbor Court's buildings had been "substantially damaged" pursuant to FEMA cost estimation guidelines. Dkt. 22 ¶ 19; Dkt. 61-1 ¶ 21. Arbor Court "used the FMO's 'Substantial Damage Determination Appeal' ('SDDA') form" to appeal the substantial damage determination. Dkt. 22

---

[2] The court takes judicial notice of this ordinance. *See Matter of Waller Creek, Ltd.*, 867 F.2d 228, 238 n.14 (5th Cir. 1989) (finding it appropriate for a federal court to take notice of a municipal ordinance in Texas because Texas courts "may take judicial notice of the ordinances of municipalities and counties of Texas").

¶ 20; Dkt. 61-1 ¶ 22. On March 28, 2018, Arbor Court was notified by letter that its SDDA had been successful for seven of the fifteen buildings. Dkt. 22 ¶ 21; Dkt. 61-1 ¶ 23.³ This letter stated that "the hold that had been placed in the City of Houston building permit system on your address has been removed," and that "[i]f you have not already done so, you may now proceed with obtaining any City of Houston permits you need to complete the repairs." Dkt. 26-1 at 1–2. Arbor Court "continued to protest the City's substantial damage determination for the remaining eight Arbor Court buildings," and was notified via email on May 1, 2018, that "all buildings will be classified as non-substantial." Dkt. 22 ¶ 22; Dkt. 61-1 ¶ 24. At some unspecified later point in time, "Arbor Court learned that the City was requiring either the Mayor's Office or Director of Public Works for the City to approve the issuance and release of any permits." Dkt. 22 ¶ 23; *see also* Dkt. 61-1 ¶ 26.

On July 17, 2018, the City notified Arbor Court via letter that it had "concluded that Arbor Court's requests for permits should be denied" because the City Engineer had "concluded that there is danger to both life and property due to flooding in the vicinity of the site." Dkt. 26-3; Dkt 67-1 at App. 09–10.⁴ That letter provided that Arbor Court could "apply for a variance from the

---

³ This letter was first introduced into the record by Arbor Court as an attachment to its first amended complaint. *See* Dkt. 14-1 (Ex. A). The City has attached this letter to its motion to dismiss the second amended complaint. Dkt. 26-1. Although not attached to the second amended complaint, the letter is referenced by Arbor Court in that pleading. Dkt. 22 ¶ 21. The court notes that in both the first and second amended complaints, Arbor Court states that the letter is from Choyce Morrow. Dkt. 14 ¶ 12; Dkt. 22 ¶ 21. However, in Arbor Court's third amended complaint, the letter is correctly identified as being from Jamila Johnson. Dkt. 61-1 ¶ 23. Because this letter, which was originally introduced by Arbor Court, and is presently before the court as an attachment to the City's motion to dismiss, is "referred to in the plaintiff's complaint and [is] central to [its] claim," the court considers it part of the pleadings. *Collins v. Morgan Stanley Dean Witter*, 224 F.3d 496, 499 (5th Cir. 2000) (quoting *Venture Assocs. Corp. v. Zenith Data Sys. Corp.*, 987 F.2d 429, 431 (7th Cir. 1993)).

⁴ The City has attached this letter to both its motion to dismiss (Dkt. 26-3) and its response in opposition to Arbor Court's motion to amend (Dkt. 67-1). This letter, like the March 28, 2018 letter, *see supra* n.3, was first introduced into the record by Arbor Court as an attachment to its first amended complaint. Dkt. 14-3. However, Arbor Court dropped all mention of this letter and the

3

requirements of Chapter 19," or it could "appeal the denial of permits to the General Appeals Board." Dkt. 67-1 at App. 09–10. From July 17, 2018 until October 14, 2019, Arbor Court did not pursue a variance or an appeal to the General Appeals Board.

On October 9, 2018, an unspecified person from "the City called Arbor Court stating that it had eight approved permits that Arbor Court needed to pick up or the City would cancel them out of the system." Dkt. 22 ¶ 25; *see also* Dkt. 61-1 ¶ 29. "On October 16, 2018, Arbor Court went to retrieve those permits." Dkt. 22 ¶ 25; *see also* Dkt. 61-1 ¶ 29. Upon arrival, an unspecified person from "the City stated that the permits would not be released without supervisor approval." Dkt. 22 ¶ 25; Dkt. 61-1 ¶ 29. Arbor Court "returned the next day to seek such supervisor approval, and it was denied, as the supervisor confirmed the City would never release any permits to Arbor Court." Dkt. 22 ¶ 25; *see also* Dkt. 61-1 ¶ 29.

To date, Arbor Court has never received any permits. Dkt. 31 at 4. Yet throughout this time period, "the City has provided permits to similarly situated apartment complexes that allowed them to rebuild," and the "only material difference between those complexes and Arbor Court is that Arbor Court is a Section 8 property, and those complexes are not." Dkt. 22 ¶ 26; *see also* Dkt. 61-1

---

City's denial of Arbor Court's permit applications from its second amended complaint and its proposed third amended complaint. The court is not obliged to ignore this letter simply because Arbor Court omits reference to it. For the reasons explained below, this denial implicates the court's subject matter jurisdiction. *See infra* § II.B. Moreover, while Arbor Court omits any reference to this letter in its second and third amended complaints, it nevertheless references this letter in its most recent pleading with this court. *See* Dkt. 61 ¶ 6 ("On July 17, 2018, . . . the City's Department of Public Works Director confirmed that Plaintiff's application for permits was denied for reasons unrelated to the substantial damage determination dispute that had been the sole basis for withholding permits."). Because this denial letter is central to Arbor Court's claims and this court's jurisdiction, and because Arbor Court's most recent filing with this court acknowledges this letter, which was originally introduced by Arbor Court, and its contents, the Court will consider this letter as part of the pleadings. *See Ramming v. United States*, 281 F.3d 158, 161 (5th Cir. 2001) (finding that the court can resolve disputed facts when its subject matter jurisdiction is implicated); *see also Collins*, 224 F.3d at 499 (documents that defendants attach to motions to dismiss may be considered if referred to in plaintiff's complaint and central to its claims).

¶ 30.

On October 14, 2019, following this court's original September 18, 2019 ruling on the pending motions (Dkts. 69, 70), Arbor Court "submitted an appeal to the Houston General Appeals Board through Houston's permitting office . . ., which includes both variance requests and a direct appeal of the City's denial of rebuilding permits." Dkt. 77 ¶ 4; *see also* Dkt. 77-1 at 22. On October 16, 2019, Arbor Court amended its appeal. Dkt. 77-1 at 1–14. As of November 12, 2019, that appeal is still pending. *Id.* at 15.[5]

### B. Procedural Background

On June 8, 2018, Arbor Court filed suit against the City alleging four causes of action: a takings claim, a due process claim, a Section 1983 claim, and a request for injunctive relief. *See* Dkt. 1. The City moved to dismiss on July 16, 2018. *See* Dkt. 7. That motion was mooted on October 1, 2018, when Arbor Court filed its first amended complaint, alleging the same causes of action, but notifying the court of a related case against Arbor Court: *Jackson et al v. U.S. Dep't of Hous. & Urban Dev. et al*, Civil Action No. H-18-2468 (S.D. Tex.). *See* Dkt. 14. The City moved to dismiss the first amended complaint on October 15, 2018. *See* Dkt. 16. On October 16, 2018, the court issued its scheduling order, setting the deadline for amended pleadings as October 31, 2018. Dkt. 17. On October 31, 2018, the City's second motion to dismiss was mooted when Arbor Court

---

[5] The court notes that Arbor Court's counsel represented to the City that it had submitted its appeal "as ordered by the U.S. District Court." Dkt. 77-1 at 18. This court has issued no such order. Nor has this court "referred the case back to the City of Houston." Dkt. 72 ¶ 7. As noted *passim*, the ability to file a variance or appeal has been within Arbor Court's control since July 17, 2018. Arbor Court did not require (nor did it receive) an order from this court to pursue a variance or appeal. Arbor Court is incorrect to construe or represent this court's holding—that a case or controversy over which this court might have jurisdiction simply does not exist until the General Appeals Board has issued a decision—as a command or requirement to undertake a course of action that Arbor Court could have pursued at any point in the 454 days between July 17, 2018 and October 14, 2019, when it finally decided to pursue relief from the General Appeals Board.

again amended its complaint. *See* Dkt. 22. In its second amended complaint, Arbor Court dropped its takings claim and added constitutional claims for violations of procedural and substantive due process, equal protection, and the Contracts Clause of the U.S. Constitution, in addition to new state law claims for violations of substantive due process and equal protection, tortious interference, and violation of vested rights. *See id.* Arbor Court retained its Section 1983 claim and request for injunctive relief. *See id.* The City moved to dismiss the second amended complaint on November 14, 2018. *See* Dkt. 26. On June 27, 2019, Arbor Court moved for leave to file its third amended complaint, seeking to update facts and reinsert the takings claim it dropped from its second amended complaint. Dkt. 61 at 2. On July 23, 2019, deadlines in this case were stayed pending a ruling in Civil Action H-18-2468. Dkt. 68. On August 15, 2019, Arbor Court was dismissed from *Jackson*. *See* Civil Action No. H-18-2468, slip op. at 1 (S.D. Tex. Aug. 15, 2019) (granting plaintiff's motion to dismiss Arbor Court as a defendant).[6]

## II. RIPENESS

Ripeness questions pervade both motions, and the court must consider jurisdictional attacks before attacks on the merits. *Ramming v. United States*, 281 F.3d 158, 161 (5th Cir. 2001).

With regard to the motion to amend (Dkt. 61), the City argues that the takings claim that Arbor Court seeks to reintroduce to this litigation is not ripe because Arbor Court has not pursued any formal appeals, meaning that it is without a final decision—a prerequisite to a ripe takings claim. Dkt. 67 ¶¶ 21–25.[7] In support of this argument, the City has attached various evidentiary materials, including the July 17, 2018 denial letter, which informed Arbor Court of the "process to

---

[6] *See supra* n.1 for a discussion of the case's history following the *Jackson* ruling.

[7] Although Arbor Court has initiated a variance request and appeal since the City first made this argument, *see supra* at 5, the outcome of that appeal is still pending.

apply for a variance," or its right to "appeal the denial of permits to the General Appeals Board." Dkt. 67-1 at App. 09. Arbor Court contends that there are no ripeness or jurisdictional issues because its "successful [substantial damage determination] appeal did not result in Plaintiff receiving any repair permits." Dkt. 61 at 9. Arbor Court also contends that "nothing about [its now-filed] appeal . . . will remedy the compensable temporary taking that already has occurred, because there is nothing about the [appeal or variance process] that addresses or deals with the question of compensation due to Plaintiff for the loss of its beneficial use of the property already suffered." Dkt. 77 ¶ 6.

With regard to the second amended complaint (Dkt. 22), the City argues that Arbor Court's claims are unripe for the same reason: Arbor Court's failure to pursue any formal appeal. Dkt. 26 at 10–11. The City attached various evidentiary materials in support of this argument as well, including the July 17, 2018 letter. *See* Dkt. 26-3. Arbor Court contends that the second amended complaint "details final decisions by the City and compliance with any appeal processes required or applicable under the circumstances," and that the City's "arguments about failure to exhaust remedies is an improper merits-based argument about disputed issues of fact, and has no bearing on the Court's Rule 12(b)(1) and 12(b)(6) inquiries." Dkt. 31 at 2 n.1.

### A. Legal Standard

"[R]ipeness inquires as to 'whether the harm asserted has matured sufficiently to warrant judicial intervention.'" *Contender Farms, L.L.P. v. U.S. Dep't of Agric.*, 779 F.3d 258, 267 (5th Cir. 2015) (quoting *Miss. State Democratic Party v. Barbour*, 529 F.3d 538, 544–45 (5th Cir. 2008)). "[R]ipeness is a constitutional prerequisite to the exercise of jurisdiction." *Shields v. Norton*, 289 F.3d 832, 835 (5th Cir. 2002) (citing *Abbott Labs. v. Gardner*, 387 U.S. 136, 148–49, 87 S.Ct. 1507, 18 L. Ed. 2d 681 (1967)). In determining whether a case is ripe, the court relies on two

considerations: "'the fitness of the issues for judicial resolution and the hardship to the parties of withholding court consideration.'" *TOTAL Gas & Power N. Am., Inc. v. Fed. Energy Regulatory Comm'n*, 859 F.3d 325, 333 (5th Cir. 2017) (quoting *New Orleans Pub. Serv., Inc. v. Council of New Orleans*, 833 F.2d 583, 586 (5th Cir. 1987)). "A case is generally ripe if any remaining questions are purely legal ones; conversely, a case is not ripe if further factual development is required." *New Orleans Pub. Serv.*, 833 F.2d at 587 (citing *Thomas v. Union Carbide Agric. Prods. Co.*, 473 U.S. 568, 105 S.Ct. 3325, 3333, 87 L.E.2d 409 (1985)).

**B. Analysis**

*1. Motion to Amend*

The court will not grant Arbor Court's motion to amend—which seeks to reintroduce its previously abandoned regulatory takings claim—if doing so would be futile. *Villarreal v. Wells Fargo Bank, N.A.*, 814 F.3d 763, 766 (5th Cir. 2016) ("A district court may deny a proposed amendment for futility . . . ." (citing *Stripling v. Jordan Prod. Co., LLC*, 234 F.3d 863, 872–73 (5th Cir. 2000)). "[A] claim that the application of government regulations effects a taking of a property interest is not ripe until the government entity charged with implementing the regulations has reached a final decision regarding the application of the regulations to the property at issue." *Williamson Cty. Reg'l Planning Comm'n v. Hamilton Bank of Johnson City*, 473 U.S. 172, 186, 105 S.Ct. 3108, 87 L. Ed. 2d 126 (1985), *overruled on other grounds by Knick v. Twp. of Scott, Pa.*, -- U.S. -- , 139 S.Ct. 2162, 204 L. Ed. 2d 558 (2019).[8] Thus, a decision is not final where a formal process of appeal is available and remains untested by the claimant. *See, e.g.*, *Hidden Oaks Ltd. v.*

---

[8] *See also Knick*, 139 S.Ct. at 2169 ("First, the developer still had an opportunity to seek a variance from the appeals board, so any taking was therefore not final. . . . Knick does not question the validity of this finality requirement, which is not at issue here."); *Campbell v. United States*, 932 F.3d 1331, 1340 n.5 (Fed. Cir. 2019) (noting that "[t]his aspect of *Williamson* remains good law under *Knick* ").

8

*City of Austin*, 138 F.3d 1036, 1041 (5th Cir. 1998) (affirming dismissal of apartment complex's takings claim for lack of jurisdiction where plaintiff's "failure to follow through with any formal process of appeal" constituted a lack of finality).[9]

Here, Arbor Court's amendment would be futile because the General Appeals Board has not decided whether to grant a variance or to overturn the denial of Arbor Court's permits. Arbor Court previously contended that it "satisfied any prudential prerequisite ripeness issues" because:

> (1) Plaintiff sought repair permits from the City; (2) the City denied Plaintiff's request for repair permits; (3) Plaintiff appealed, pursuant to the City's designated appeal process; (4) Plaintiff's successful appeal did not result in Plaintiff receiving any repair permits; and (5) Plaintiff filed this lawsuit after the refusal of the City to release any repair permits after its successful appeal.

Dkt. 61 at 9. At the time of its motion, the only appeals process that Arbor Court claimed to have participated in was the SDDA. Dkt. 61-1 ¶ 22. But the removal of a substantial damage determination is antecedent to the approval of any permits. *See* Floodplain Ordinance, Houston, Tex. Rev. Ordinances, ch. 19, § 19-11(a)(4) (Jun. 18, 2018) ("No building permit, paving permit, utility construction permit or other permit required for a structure or development shall be issued . . . unless the applicant demonstrates . . . removal of a substantial damage determination.").[10] Arbor Court attempts to recast the denial of its permit applications as revocation without process. Dkt. 61-1 ¶ 28 ("Instead, the City unilaterally, arbitrarily, and capriciously revoked permits it agree to release in March of 2018 and again on May 1, 2018 . . . ."). However, Arbor Court makes only three

---

[9] Texas courts similarly require a final decision before a takings claim is ripe under the Texas Constitution. *See Mayhew v. Town of Sunnyvale*, 964 S.W.2d 922, 929 (Tex. 1998) (holding that "in order for a regulatory takings claim to be ripe, there must be a final decision"); *see also City of Carrollton v. HEB Parkway S., Ltd.*, 317 S.W.3d 787, 796–99 (Tex. App. 2010) (holding regulatory takings claims under federal and state constitutions unripe where the ordinance at issue allowed for a variance and plaintiff never asked for one).

[10] This is the version of the ordinance in place at the time of the July 17, 2018 denial letter.

allegations that postdate the July 17, 2018 denial letter.

First, it alleges that on October 9, 2018, the City called about "eight approved permits that needed to be picked up or the City would cancel them out of the system." Dkt. 61-1 ¶ 29. The complaint is conspicuously silent as to which department within the City this call came from, or whether the permits in question were floodplain repair permits or some other kind of permit. *Id.* Second, Arbor Court alleges that these permits were not released when it went to retrieve them on October 16, 2018, because supervisor approval was required. *Id.* Third, Arbor Court alleges that when it sought this approval the next day, approval was denied. *Id.*

The court accepts these allegations as true; but accepting them as true does not change the fact that "the government entity charged with implementing the regulations" about floodplain repair permits has not made a final decision. *Williamson Cty.*, 473 U.S. at 186. The unspecified person that called Arbor Court on October 9, 2018, and the unspecified supervisor that denied approval on October 17, 2018, are not the General Appeals Board, which is the only entity with "final" decision-making authority regarding Arbor Court's permits. Floodplain Ordinance, § 19-22(h).

In its response to the City's motion to dismiss, Arbor Court claims that it "has now clearly 'controverted' any prior 'admission' that all of the permits were simply denied, rather than granted and revoked," and that "any prior 'evidentiary admission' creates a disputed fact issue which cannot be appropriately resolved via a motion to dismiss." Dkt. 31 at 4. This is wrong on both counts. The court need "not accept as true conclusory allegations or unwarranted deductions of fact." *Tuchman v. DSC Comms. Corp.*, 14 F.3d 1061, 1067 (5th Cir. 1994).[11] Where, as here, the court's subject

---

[11] Arbor Court cites *Tuchman* for the proposition that "[f]actual allegations may be based on information and belief." Dkt. 31 at 2. This is only true where "the facts pleaded in a complaint are peculiarly within the opposing party's knowledge." *Tuchman*, 14 F.3d at 1068. Moreover, "this luxury 'must not be mistaken for license to base claims of fraud on speculation and conclusory allegations.'" *Id.* (citing *Wexner v. First Manhattan Co.*, 902 F.2d 169, 172 (2d. Cir. 1990)).

matter jurisdiction is implicated, the court is empowered to resolve disputed facts. *Ramming*, 281 F.3d at 161 ("Lack of subject matter jurisdiction may be found in any one of three instances: (1) the complaint alone; (2) the complaint supplemented by undisputed facts evidenced in the record; or (3) the complaint supplemented by undisputed facts *plus the court's resolution of disputed facts* (quoting *Barrera–Montenegro v. United States*, 74 F.3d 657, 659 (5th Cir. 1996) (emphasis added)). The "party asserting jurisdiction 'constantly bears the burden of proof that jurisdiction does in fact exist.'" *Morris v. Thompson*, 852 F.3d 416, 419 (5th Cir. 2017) (citing *Ramming*, 281 F.3d at 161). The court finds that Arbor Court has not clearly controverted the July 17, 2018 denial of permits. It strains logic to credit Arbor Court's allegation that the City revoked permits that Arbor Court admits it has never physically received, and that by Arbor Court's own admission, the City had already "denied for reasons unrelated to the substantial damage determination" on July 17, 2018. Dkt. 61 ¶ 6. There is no hardship to Arbor Court in finding that this dispute is not ripe. For 454 days, Arbor Court had the ability to seek a variance from or appeal the July 17, 2018 denial of its permits to the General Appeals Board. Arbor Court does not dispute its ability to seek such a variance, or to appeal the denial of its permits to the General Appeals Board, nor does it argue why such processes would be futile.[12] Indeed, the City Engineer testified that it was not futile:

> It is not futile. I don't know if it's futile. I can't answer that question. Seeking a variance from me, I might have an opinion on it, just like I offered an opinion here.
>
> But there is an appeals board, general appeals board, that is *totally independent of this office*, *independent of me*, independent of . . .

---

[12]Arbor Court asserts that "[a]ny appeal . . . would indeed be futile" because the City's Director of Public Works "has testified that the hold on permits requested by Plaintiff can only be lifted by her decision, after Mayoral approval." Dkt. 61 at 10. Taking this allegation as true, it still does not explain why a variance application or appeal to the General Appeals Board would be futile as neither the Mayor nor the Director of Public Works speaks for the General Appeals Board, nor does Arbor Court allege as much.

> So this could have very well been brought forward, and *they can make an independent decision*.

Dkt. 77-1 at 25–26 (emphasis added). Accordingly, this issue is not fit for judicial resolution so long as "a different government unit with express authority to grant that relief" has not had the opportunity to render a decision. *City of Carrollton*, 317 S.W.3d at 799. Because further factual development—a decision from the General Appeals Board—is needed, this dispute is not ripe. Accordingly, any amendment to add Arbor Court's takings claims would be futile, meaning Arbor Court's motion to amend should be denied. *See Bombardier Aerospace Corp. v. United States*, 831 F.3d 268, 284 (5th Cir. 2016) ("Considering the late timing of the motion and that, as evidenced by our previous analysis, any amendment would be futile, the district court did not abuse its discretion in denying the motion.").

The court denies Arbor Court's motion to amend for the additional reason that Arbor Court has failed to establish "good cause." Arbor Court incorrectly argues that its motion to amend is governed by the permissive standard of Federal Rule of Civil Procedure 15(a)(2). Dkt. 61 at 7. The deadline for amending pleadings in this case was October 31, 2018. Dkt. 17. Arbor Court filed its motion to amend nearly eight months after that deadline. "Federal Rule of Civil Procedure 16(b) governs amendment of pleadings after a scheduling order's deadline to amend has expired." *Fahim v. Marriott Hotel Servs., Inc.*, 551 F.3d 344, 348 (5th Cir. 2008) (citing *S&W Enters., LLC v. Southtrust Bank of Ala., NA*, 315 F.3d 533, 535 (5th Cir. 2003)). "Four factors are relevant to good cause: '(1) the explanation for the failure to timely move for leave to amend; (2) the importance of the amendment; (3) potential prejudice in allowing the amendment; and (4) the availability of a continuance to cure such prejudice.'" *Id.* (quoting *Sw. Bell Tel. Co. v. City of El Paso*, 346 F.3d 541, 546 (5th Cir. 2003)).

Arbor Court claims the loss of its ability to operate the property "as an affordable HUD subsidized residential apartment community" constitutes a taking that is ripe for review. Dkt. 77 ¶¶ 6–7. However, according to its correspondence with the City, Arbor Court was aware of this loss since at least May 22, 2019. *See* Dkt. 62 at 40. Yet Arbor Court waited until June 27, 2019 to move to amend. Dkt. 61. Arbor Court fails to explain this delay, despite "ha[ving] the benefit of the Court's initial decision denying the Motion [to amend]" (Dkt. 77 ¶ 1), including the standard articulated in the preceding paragraph. Arbor Court further argues that "[g]ood cause exists to allow the amendment, particularly if the Court opts to stay or abate this case pending the determination of the Plaintiff's pending appeal." Dkt. 77 ¶ 10.[13] But the court will not stay this case to permit the determination of an appeal that Arbor Court inexplicably failed to pursue for 454 days. Because Arbor Court fails to establish "good cause," its motion to amend should be denied.

---

[13] Arbor Court also implies that this court has invoked the doctrine of primary jurisdiction. *See* Dkt. 77 ¶ 10. *See also* Dkt. 72 at 6–8 (arguing that the court "has jurisdiction over all of Plaintiff's claims . . . and the court is authorized to stay or abate the case pending completion of the administrative appeals process it has required Plaintiff to complete as condition to litigating those claims") (emphasis in original). As an initial matter the court reiterates that it has not ordered or required Arbor Court to pursue any appeals. *See supra* n.5. The court merely finds that this issue is not fit for judicial resolution so long as "a different government unit with express authority to grant that relief" has not had the opportunity to render a final decision. *City of Carrollton*, 317 S.W.3d at 799. Whether Arbor Court wishes to pursue relief with that government unit—here, the General Appeals Board—is a matter that is and has been within Arbor Court's discretion since July 17, 2018.

Moreover, the doctrine of primary jurisdiction "allows courts to defer consideration of issues and causes of action which fall within the special knowledge or expertise of a *federal administrative agency* until the administrative agency has been afforded an opportunity to act." *Maritrend, Inc. v. Galveston Wharves*, 152 F.R.D. 543, 554 (S.D. Tex. 1993) (emphasis added) (citing *United States v. General Dynamics Corp.*, 828 F.2d 1356 (9th Cir. 1987)). Furthermore, "the doctrine of primary jurisdiction 'is not related to the *subject matter jurisdiction* of the district court over the underlying action.'" *Elam v. Kansas City S. Ry. Co.*, 635 F.3d 796, 809 (5th Cir. 2011) (emphasis in original) (quoting *S. New Eng. Tel. Co. v. Global NAPs Inc.*, 624 F.3d 123, 136 (2d Cir. 2010)). Unlike cases where the primary jurisdiction doctrine is invoked, this court does not have concurrent jurisdiction with the General Appeals Board. *Only* the General Appeals Board can grant a variance or appeal. And until the General Appeals Board issues a decision on a variance request or appeal, there simply is no case or controversy over which this court has jurisdiction.

*2. Motion to Dismiss for Lack of Subject Matter Jurisdiction*

Arbor Court's federal claims for violations of substantive and procedural due process, equal protection, and the Contracts Clause are no more fit for judicial resolution than Arbor Court's proposed takings claim. At the outset the court notes that Arbor Court purports to bring each of these claims directly under the Constitution, in addition to under Section 1983. Dkt. 22 ¶¶ 30–65. However, "federal courts, and this Circuit in particular, have been hesitant to find causes of action arising directly from the Constitution." *Hearth, Inc. v. Dep't of Public Welfare*, 617 F.2d 381, 382 (5th Cir. 1980) (per curiam). Direct constitutional violations are duplicative where a statutory mechanism like Section 1983 is available to the plaintiff. *See Burns-Toole v. Byrne*, 11 F.3d 1270, 1273 n.3 (5th Cir. 1994) (holding dismissal of direct constitutional torts proper because "the proper vehicle for these allegations is § 1983"). Accordingly, the court considers these claims through the lens of Section 1983.[14]

Municipalities face liability under § 1983 only if "action pursuant to official municipal policy of some nature caused a constitutional tort." *Monell v. Dep't of Soc. Servs. of New York*, 436 U.S. 658, 691, 98 S.Ct. 2018, 56 L. Ed. 2d 611 (1978) (rejecting *respondeat superior* liability). "To establish municipal liability under § 1983, a plaintiff must show that (1) an official policy (2) promulgated by the municipal policymaker (3) was the moving force behind the violation of a

---

[14] Whether a Contracts Clause violation gives rise to a cause of action under Section 1983 is unresolved in the Fifth Circuit. *See Dennis Melancon, Inc. v. City of New Orleans*, 703 F.3d 262, 279 n.14 (5th Cir. 2012). However, the court need not resolve this issue. The Contracts Clause's prohibition against the impairment of contracts is aimed "not at the decisions of its courts, or the acts of administrative or executive boards or officers, or the doings of corporations or individuals," but "at the legislative power of the state." *New Orleans Waterworks Co. v. Louisiana Sugar-Ref. Co.*, 125 U.S. 18, 30, 8 S. Ct. 741, 31 L. Ed. 607 (1888). Here, Arbor Court does not attack the Floodplain Ordinance itself, it attacks only how the ordinance has been applied to Arbor Court. Absent some showing of how such an application is an exercise of legislative power, this claim is unripe whether brought directly under the U.S. Constitution or Section 1983.

constitutional right." *Peterson v. City of Fort Worth*, 588 F.3d 838, 847 (5th Cir. 2009). "A policy or custom is official only 'when it results from the decision or acquiescence of the municipal officer or body with 'final policymaking authority' over the subject matter of the offending policy.'" *Id.* (quoting *Jett v. Dallas Indep. Sch. Dist.*, 491 U.S. 701, 737, 109 S.Ct. 2702, 105 L. Ed. 2d 598 (1989)). "'[W]hether a particular official has 'final policymaking authority' is a question of *state law*.'" *Jett*, 491 U.S. at 737 (emphasis in original) (quoting *St. Louis v. Praprotnik*, 485 U.S. 112, 123, 108 S.Ct. 915, 99 L. Ed. 2d 107 (1988) (plurality opinion)).

Here, the municipal body with "final policymaking authority" over the denial of repair permits under the Floodplain Ordinance is the General Appeals Board. *See* Floodplain Ordinance, Houston, Tex., Code of Ordinances ch. 19, § 19-22(h) (Jun. 18, 2018) ("The denial of a variance by the board shall be final and is not subject to reconsideration.").[15] Assuming Arbor Court is correct that "one or both of the Mayor's Office and the Director of Public Works" have "directed" the denial of Arbor Court's permits (Dkt. 22 ¶ 33), that does not change the fact that the Mayor and the Director of Public Works are not the General Appeals Board—they are not the officials or entities with final policymaking authority over repair permits. *See Peterson*, 588 F.3d at 847. *See also supra* at 11–12 (quoting the City Engineer's testimony about the General Appeals Board's independence).

Arbor Court's attempts to establish the ripeness of its dispute with the City by analogizing itself to the plaintiff in *Bowlby v. City of Aberdeen, Miss.*, 681 F.3d 215 (5th Cir. 2012), are inapposite. Dkt. 34 at 11. In *Bowlby*, "the Board granted Bowlby the requested permits and told her to proceed with her business plan." 681 F.3d at 218. Indeed, Bowlby was in business for over a month before the Board revoked her permits. *Id.* Here, by Arbor Court's own admission in its most

---

[15] For revoked, suspended, or revised permits, the municipal body with "final policymaking authority" is the City Council. *See* § 19-23(g) ("The revocation, suspension, or revision of a floodplain development permit may be appealed to the city council . . . .").

recent filing with this court, "Plaintiff's application for permits was denied for reasons unrelated to the substantial damage determination dispute." Dkt. 61 ¶ 6. And unlike the plaintiff in *Bowlby*, Arbor Court "has conceded it never received" the permits. Dkt. 31 at 4.

Arbor Court attempts to nullify the fact that its permits were denied, and that it has never received any permits, by straining the meaning of "issued." Dkt. 31 at 4–5. Even assuming that Arbor Court is correct that receipt of permits is not required because "issued" means "put forth," "send out," or "circulated or published" (*see id.*), the most recent document the City put forth, sent out, or otherwise circulated or published to Arbor Court concerning its permits is the July 17, 2018 denial letter. Moreover, Arbor Court's argument that the permits were actually issued and revoked are belied by Arbor Court's most recent filing with this court, which states that Arbor Court's efforts were futile "because of an official decision *that no permits would issue*." Dkt. 61 ¶ 5.

So long as there is outstanding factual development—what the General Appeals Board would say about the denial of Arbor Court's permits or whether it would grant a variance—this issue remains unfit for judicial resolution. *See, e.g.*, *John Corp. v. City of Houston*, 214 F.3d 573, 584 (5th Cir. 2000) ("If the Court considered the claim to be a due process, rather than a takings claim, the absence of a final decision still made that claim unripe." (citing *Williamson Cty.*, 473 U.S. at 197–200)). Arbor Court is not prejudiced by the court's refusal to entertain such a dispute where the ability to procure such a decision has been within Arbor Court's control since July 17, 2018. Accordingly, Arbor Court's Section 1983 claims—for violations of its rights to substantive and procedural due process, equal protection, and against the impairment of contracts—should be dismissed for lack of federal jurisdiction because they are unripe.

### III. SUPPLEMENTAL JURISDICTION

Because none of Arbor Court's federal claims survives the motion to dismiss, the court declines to exercise supplemental jurisdiction over Arbor Court's state law claims (*see* Dkt. 22 ¶¶ 66–79) for violations of the due process and equal protection provisions of the Texas Constitution, tortious interference, and violation of vested rights. *See Moore v. Willis Indep. Sch. Dist.*, 233 F.3d 871, 876 (5th Cir. 2000) (affirming dismissal of plaintiff's Section 1983 claims and declining to exercise jurisdiction under 28 U.S.C. § 1367(c)(3) over the supplemental state law claims).

### IV. REQUEST FOR PRELIMINARY AND PERMANENT INJUNCTIVE RELIEF

Arbor Court requests preliminary and permanent injunctive relief. *See* Dkt. 22 ¶¶ 80–91. "This count of the complaint fails to state a claim because after dismissal of the substantive claims there is no underlying legal action upon which [the] Plaintiff may receive . . . injunctive relief. . . . A claim for injunctive relief does not stand alone, but requires a viable underlying legal claim." *Horne v. Time Warner Operations, Inc.*, 119 F. Supp. 2d 624, 630 (S.D. Miss. 1999), *aff'd sub nom. Horne v. Time Warner Operations*, 228 F.3d 408 (5th Cir. 2000) (per curiam). Because all of Arbor Court's underlying claims have been dismissed, Arbor Court's request for injunctive relief must also be dismissed.

### V. CONCLUSION

For the reasons stated above, Arbor Court's motion to amend (Dkt. 61) is **DENIED**; the City's motion to dismiss (Dkt. 26) is **GRANTED**. The case is **DISMISSED WITHOUT PREJUDICE**.

Signed at Houston, Texas on November ___13th___, 2019.

Gray H. Miller
Senior United States District Judge