**IN THE UNITED STATES DISTRICT COURT**
**FOR THE SOUTHERN DISTRICT OF TEXAS**
**HOUSTON DIVISION**

| | | |
|---|---|---|
| **DM ARBOR COURT, LTD.,** | § | |
| | § | |
| *Plaintiff,* | § | |
| | § | |
| v. | § | **Civil Action No.: 4:18-cv-01884** |
| | § | |
| **CITY OF HOUSTON, TEXAS,** | § | |
| | § | |
| *Defendant.* | § | |

**CITY OF HOUSTON'S MOTION FOR JUDGMENT**
**REGARDING THE HAP CONTRACT**

The City of Houston renews its motion for judgment regarding the Housing Assistance Payment ("HAP") Contract following the post-remand hearing on damages. The value of the HAP contract, if any, cannot be included in just compensation payable to DMAC for three reasons.[1]

**First, the City did not take the HAP Contract.** The Court has already resolved the question of whether the City took the HAP Contract. As found following the liability phase of this case, DMAC expended significant effort to transfer the HAP Contract to its affiliate, DM Cullen Park. Morgan Cox represented to HUD that DMAC was actively seeking another apartment complex in Texas to effectuate an 8bb transfer. (*See* Ex. B ECF No. 315 ¶ 99; Ex. B DX13.) DMAC itself requested that HUD transfer the HAP Contract to Cullen Park. (*See* Ex. A ECF No. 315 ¶

---

[1] The City incorporates in this brief by reference its Motion to Exclude or Limit Plaintiff's Damages Expert Testimony (ECF No. 361), the City's Post-Remand Brief on the Measure of Damages, the City's Post-Remand Brief on Repair Costs, and the City's Post-Remand Brief on the HAP Contract, filed contemporaneously with this motion.

Furthermore, Plaintiff failed to prove any elements of a claim under 42 U.S.C. § 1983. *See Monell v. Department of Social Services*, 436 U.S. 658 (1978). The City's post-remand briefing is asserted subject to the City's contention that Plaintiff failed to prove a claim under §1983, and without waiver to further briefing and argument on this point.

HB: 4914-5915-2306.2

100; Ex. C DX17.) Two of DMAC's principals, Douglas Hickcock and Morgan Cox, are the only two partners in DM Cullen Park. *Id.* ¶ 102; ECF No. 298 at 73:19-22, 74:1-7. DMAC reassured HUD that DM Cullen Park is DMAC under another name; in DMAC's own words:

> "Marquis Acquisition, Inc., who controls Owner A [DMAC] is in the process of acquiring Project B, which will be owned by a single-purpose entity affiliate ("Owner B") [DM Cullen Park]. DX 17 at 2. So here, DMAC represents that Marquis Acquisition, Inc. both 'controls' DMAC and 'acquir[ed]' Cullen Park." ECF No. 315 ¶ 103.

"If a potentially transferrable HAP Contract impacted the value of the property, then the HAP Contract could not have been taken." ECF No. 315 ¶ 135. Thus, the "City did *not* take the HAP Contract's value." *Id.* ¶ 136 (emphasis in original). This finding of fact was left undisturbed by the Fifth Circuit.

The Marquis Group was able to transfer the HAP Contract to another one of its properties. Messrs. Hickock and Cox continue to earn whatever profits they can from that contract. There's nothing inappropriate with this fact; discounting this fact, however, permits a double recovery that is inconsistent with the undisputed facts.

**Second, DMAC admits that it did not own the HAP Contract.** As Mr. Hickock testified: "[T]he simplest way to say it, we do not own the HAP contract. The government owns the HAP contract." (*See* Ex. E) Appeal Remand Hearing Transcript Day 1, 203:24-204:1. Because DMAC admitted that it does not own the HAP Contract, the City cannot have taken the value of that contract from DMAC.

DMAC's admission comports with existing law regarding HAP contracts. When HUD suspended rent payment under a HAP contract and refused to permit the property owner to sell the property, the Court of Federal Claims concluded that there was no Fifth Amendment taking

because the property owner had no investment-backed expectation in the right to receive subsidy payments. *Normandy Apts., Ltd. v. United States*, 116 Fed. Cl. 431, 442 (2014).

**Third, expected future profits are not recoverable in a takings case.** *United States ex rel. & for Use of Tennessee Valley Auth. v. Powelson*, 319 U.S. 266, 282 (1943) ("[T]he sovereign must pay only for what it takes, not for opportunities which the owner may lose."). The value of the HAP contract, if any, is expected future above-market (grossly inflated) rents from rental incomes subsidized by the federal government. *See* EX D, Appraisal Report from Pallante & Associates. Expected future profits are not recoverable in a takings case. The foundational takings remedy is "just compensation" for the property interest taken, measured by fair market value at the time the government action effects the taking. *See, e.g.*, *Horne v. Dep't of Agric.*, 576 U.S. 350, 370 (2015); *United States v. 50 Acres of Land*, 469 U.S. 24, 29 (1984). Market value is the amount that a willing buyer would pay to a willing seller. *See, e.g.*, *United States v. Miller*, 317 U.S. 369, 374 (1943); *see also 50 Acres of Land*, 469 U.S. at 25 n.1. Here, the Fifth Circuit has established that the *Lucas* taking it found was effectuated by the City's permit denial on July 17, 2018. *DM Arbor Court, Ltd. v. City of Houston*, 150 F.4th 418, 423–24 (5th Cir. 2025). Accordingly, just compensation is measured by market value as of that date.

Federal takings law draws a firm distinction between compensation for the "property" taken and losses that are merely "incidental to or as a consequence of the taking" and do not inhere in market value. In *United States ex rel. & for Use of Tennessee Valley Auth. v. Powelson*, 319 U.S. 266, 281–84 (1943), the Court held that the government was not required to compensate for the loss of a business opportunity in the course of condemning property, and that the sovereign must pay only for what it takes, not for opportunities the owner may lose. Similarly, in *United States v. General Motors Corp.*, 323 U.S. 373, 378–79 (1945), the Court stated that when the sovereign

takes a fee interest in property, compensation does not include future loss of profits, the expense of moving personal property, the loss of goodwill, or other like consequential losses. *See also Ideker Farms, Inc. v. United States*, 71 F.4th 964, 987 (Fed. Cir. 2023) (explaining that consequential damages, including lost profits, loss of goodwill, and costs of moving to a new facility are not within the scope of the Fifth Amendment); *Taylor v. United States*, 959 F.3d 1081, 1088 n.3 (Fed. Cir. 2020) (noting that the Takings Clause does not provide for compensation for consequential losses).

The Fifth Circuit applied this key principle in *Hooten v. United States*, 405 F.2d 1167, 1168–69 (5th Cir. 1969), where it rejected a property manager's claim for lost commissions when condemnation of the underlying properties terminated the management contracts. The court held that it is "well settled" that business damages incident to condemnation are not compensable. *Id.*

Accordingly, the City moves for entry of judgment excluding the value of the HAP contract from any award of damages in this case, and excluding the value of the HAP contract from any portion of the just compensation to be awarded to the landowner.

HB: 4914-5915-2306.2

Dated June 5, 2026                  Respectfully submitted,


By:    */s/ Ben Stephens*
        Ben Stephens
        State Bar No. 24098472
        Ben.Stephens@huschblackwell.com
        Kate David
        State Bar No. 24045749
        Kate.David@huschblackwell.com
        Nicholas D.  Stepp
        State Bar No. 24077701
        Nick.Stepp@huschblackwell.com
        **HUSCH BLACKWELL LLP**
        600 Travis Street, Suite 2350
        Houston, Texas 77002
        T (713) 647-6800
        F (713) 647-6884

        */s/ Kenneth Soh*
        Kenneth Soh
        Senior Assistant City Attorney
        State Bar No. 00794670
        **City of Houston Legal Department**
        900 Bagby, 4th Floor
        Houston, Texas 77002
        T (832) 393-6475
        F (832) 393-6259
        Kenneth.Soh@houstontx.gov

        **ATTORNEYS FOR THE CITY**

**CERTIFICATE OF SERVICE**

HB: 4914-5915-2306.2

The undersigned hereby certifies that a copy of the foregoing was electronically served on all parties having appeared in this matter via the CM/ECF Filing system on June 5, 2026.

*/s/ Ben Stephens*
Ben Stephens